Douglas Caiafa, Esq. (SBN 107747)
DOUGLAS CAIAFA, A Professional Law Corporation
11845 West Olympic Boulevard, Suite 1245
Los Angeles, California 90064
(310) 444-5240 - phone; (310) 312-8260 - fax
Email: dcaiafa@caiafalaw.com

Christopher J. Morosoff, Esq. (SBN 200465)
LAW OFFICE OF CHRISTOPHER J. MOROSOFF
77-760 Country Club Drive, Suite G
Palm Desert, California 92211
(760) 469-5986 - phone; (760) 345-1581 - fax
Email: cjmorosoff@morosofflaw.com

Attorneys for Plaintiffs DANIEL FRIEDMAN, et al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL FRIEDMAN, an individual; and JAMES HERNANDEZ, an individual; individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., a National Banking Association; WELLS FARGO & COMPANY, a Delaware Corporation; and DOES 1 through 6,300, inclusive, <br><br> Defendants. | Case No. 2:16-cv-07405 <br><br> CLASS ACTION COMPLAINT <br><br> 1. IDENTITY THEFT; <br> 2. UNFAIR BUSINESS PRACTICES; <br> 3. FRAUDULENT BUSINESS PRACTICES; <br> 4. UNLAWFUL BUSINESS PRACTICES; <br> 5. VIOLATION OF FEDERAL FAIR CREDIT REPORTING ACT; <br> 6. VIOLATION OF CALIFORNIA PENAL CODE §496; <br> 7. CONVERSION; <br> 8. BREACH OF FIDUCIARY DUTY; <br> 9. INTENTIONAL OR NEGLIGENT MISREPRESENTATION; <br> 10. CONCEALMENT; <br> 11. AIDING & ABETTING; <br> 12. NEGLIGENT HIRING; <br> 13. VIOLATION OF RICO ACT; <br> 14. ACCOUNTING |

"There is a sacred trust that consumers put in their financial institutions – a faith that their hard-earned money will be safe and secure, and that their banks' actions will be in the best interests of customers like themselves. Wells Fargo broke that trust."

-- Los Angeles City Attorney Michael N. Feuer, Testimony before the U.S. Senate Committee on Banking, Housing and Urban Affairs (September 20, 2016).

"[T]he misaligned priorities and unacceptable behavior at Wells Fargo resulted in unsafe and unsound practices that led to widespread consumer harm. . . [T]he unsafe and unsound sales practices at the Bank, including the opening and manipulation of fee-generating customer accounts without the customer's authorization, are completely unacceptable and have no place in the federal banking system."

-- United States Comptroller of the Currency Thomas J. Curry, Testimony before the U.S. Senate Committee on Banking, Housing and Urban Affairs (September 20, 2016).

"[A]ccounts were opened and products were provided to customers that they did not authorize or want. . . I accept full responsibility for all unethical sales practices in our retail banking business, and I am fully committed to doing everything possible to fix this issue."

-- John Stumpf, Chairman & CEO of Wells Fargo & Co., Testimony before the U.S. Senate Committee on Banking, Housing and Urban Affairs (September 20, 2016).

/ / /

/ / /

/ / /

/ / /

- 1 -
CLASS ACTION COMPLAINT

This Class Action Complaint ("Complaint") is brought by individual consumers in California against WELLS FARGO BANK, N.A., and WELLS FARGO & COMPANY (collectively "Defendants" or "Wells Fargo") for engaging in a company-wide fraudulent scheme to open deposit accounts, credit card accounts, and other banking products and services in customers' names without the customers' knowledge, consent or approval.  Plaintiffs DANIEL FRIEDMAN ("Friedman") and JAMES HERNANDEZ ("Hernandez") (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated (collectively referred to as "Class Members"), bring this action against Defendants, and for causes of action against Defendants, based upon personal knowledge, information and belief, and investigation of counsel, allege as follows:

## JURISDICTION AND VENUE

1.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d) (the Class Action Fairness Act of 2005 ("CAFA")) because the amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs, because the Class consists of 100 or more putative Class Members, and because at least one putative Class Member is diverse from Defendant, a Delaware corporation with its principal place of business in Sioux Falls, South Dakota.

2.   This is a civil action brought under and pursuant to 15 U.S.C. §1681, *et seq.* (the Fair Credit Reporting Act or "FCRA"), 18 U.S.C. §1962, *et seq.* (the Racketeer Influenced and Corrupt Organizations Act or "RICO"), California Civil Code §1798.80, *et seq.* (California's identity theft law), California Business & Professions Code §17200, *et seq.* (the Unfair Competition Law or "UCL"), and California Penal Code §496(c).

3.   Venue is proper in the Southern Division of the Central District of California because Defendants transact a substantial amount of business in this District, Plaintiff Friedman resides in Los Angeles County, California, and the

CLASS ACTION COMPLAINT

1    transactions which form the basis of Friedman's claims against Defendants

2    occurred in the city of Agoura Hills, in Los Angeles County, California.

3   4.   The Central District of California has personal jurisdiction over the

4    Defendants named in this action because Defendants are corporate business

5    entities authorized to do business in the State of California and registered

6    with the California Secretary of State to do business, with sufficient

7    minimum contacts in California.  Defendants have otherwise intentionally

8    availed themselves of the California market through the ownership and

9    operation of approximately 850 locations within the State of California, such

10    that the exercise of jurisdiction over Defendants by the California courts is

11    consistent with traditional notions of fair play and substantial justice.

12   5.   Defendants transact business within the county of Los Angeles, and

13    elsewhere throughout the State of California.  The violations of law alleged

14    herein have been carried out within the County of Los Angeles and

15    throughout the State of California.

16                     **<u>INTRODUCTION</u>**

17   6.   For years, Wells Fargo has victimized its customers by using pernicious and

18    often illegal sales tactics to maintain high levels of sales of its banking and

19    financial products. The banking business model employed by Wells Fargo is

20    based on selling customers multiple banking products, which Wells Fargo

21    calls "solutions." In order to achieve its goal of selling a high number of

22    "solutions" to each customer, Wells Fargo imposes unrealistic sales quotas

23    on its employees, and has adopted policies that have, predictably and

24    naturally, driven its bankers to engage in fraudulent behavior to meet those

25    unreachable goals. As a result, Wells Fargo and their employees have

26    engaged in unfair, unlawful, and/or fraudulent conduct, including opening

27    customer accounts, and issuing credit cards, without authorization. Wells

28    Fargo has known about and encouraged these practices for years. It has done

**CLASS ACTION COMPLAINT**

little, if anything, to discourage its employees' behavior or protect its customers. Worse, on the rare occasions when Wells Fargo did take action against its employees for unethical sales conduct, Wells Fargo further victimized its customers by failing to inform them of the breaches, refund fees they were owed, or otherwise remedy the injuries that Wells Fargo and its bankers have caused. The result is that Wells Fargo has created the largest identity theft ring in history and engineered a virtual fee-generating machine, through which its customers are harmed, its employees take the blame, and Wells Fargo reaps the profits.

7.   Defendant Wells Fargo & Company Operates the fourth biggest bank in the United States, and the largest bank headquartered in California. It is California's oldest bank, having begun banking services in 1852. Wells Fargo Bank, N.A., is a subsidiary of Wells Fargo & Company, and provides most of the banking products and services that are the subject of this action.

8.   Wells Fargo boasts about the average number of products held by its customers, currently approximately six bank accounts or financial products per customer. Wells Fargo seeks to increase this to an average of eight bank accounts or financial products per account customer, a company goal Wells Fargo calls the "Gr-eight" initiative.

9.   Wells Fargo's resulting market dominance has come at a significant price to the general public, because it has been achieved in large part through an ambitious and strictly enforced sales quota system. Wells Fargo quotas are difficult for many bankers to meet without resorting to the abusive and fraudulent tactics described further herein. Moreover, Wells Fargo enforces its sales quotas by constant monitoring and threats of discipline. Daily sales for each branch, and each sales employee, are reported and discussed by Wells Fargo's District Managers four times a day. Those failing to meet

- 4 -
CLASS ACTION COMPLAINT

daily sales quotas are approached by management, and often reprimanded and/or told to "do whatever it takes" to meet their individual sales quotas.

10. Consequently, Wells Fargo's managers and bankers have for years engaged in unethical, and illegal practices called "gaming," which at its core involves nothing less than identity theft. Gaming consists of, among other things, opening and manipulating fee generating customer accounts through often unfair, fraudulent, and unlawful means, such as omitting signatures and adding unwanted secondary accounts to primary accounts without customers' knowledge or permission. Other practices utilized as part of these "gaming" schemes have included misrepresenting the costs, benefits, fees, and/or attendant services that come with an account or product, all in order to meet sales quotas.

11. Chairman and CEO of Wells Fargo, John Stumpf, admitted in a statement to the United States Senate Committee on Banking, Housing and Urban Affairs on September 20, 2016, that "accounts were opened and products were provided to customers that they did not authorize or want."  Mr. Stumpf went on to acknowledge that Wells Fargo had "failed to fulfill our responsibility to our customers."  Mr. Stumpf also acknowledged that Wells Fargo had violated "the trust" of Wells Fargo customers, like Plaintiffs here, and apologized "for not doing more sooner to address the causes of this unacceptable activity."  Mr. Stumpf stated that Wells Fargo "should have done more sooner to eliminate unethical conduct."

12. Mr. Stumpf admitted in his statement to the Senate Banking Committee that when Wells Fargo provided customers with products and services that they "did not request or authorize," Wells Fargo had "done something flat wrong."  Mr. Stumpf admitted that Wells Fargo was "not doing what was right for customers and [was] providing products to customers they did not want."  Mr. Stumpf admitted that Wells Fargo had engaged in "simulated

CLASS ACTION COMPLAINT

funding" - "a prohibited practice whereby an employee creates an account for a customer and then funds it in order to make it look as if the customer had funded the account." This practice is otherwise known as identity theft. Mr. Stumpf stated that "approximately 1.5 million" deposit accounts at Wells Fargo may have been "unauthorized" by the customers in whose name the accounts were opened. In addition, Mr. Stumpf stated that "approximately 565,000" credit cards may also have been unauthorized by the customer in whose name the cards were issued.

13. Mr. Stumpf himself described Wells Fargo's practices complained of in this Complaint as "[w]rongful sales practice behavior" and "unethical sales practices."

14. Mr. Stumpf told the Senate Banking Committee that Wells Fargo is now looking for ways "of preventing future violations."

15. The U.S. Comptroller of the Currency, in testimony to the Senate Banking Committee on September 20, 2016, testified that by engaging in the practices described herein Wells Fargo had "engaged in reckless unsafe or unsound banking practices," and further described those practices as "unfair and deceptive." The Comptroller testified that "the unsafe and unsound sales practices at [Wells Fargo], including the opening and manipulation of fee-generating customer accounts without the customer's authorization, are completely unacceptable and have no place in the federal banking system." The Comptroller further testified that actions must be taken "to remediate and deter such practices" and to ensure "[c]ompliance with consumer protection laws."

16. In July 2016, after years of investigation, the Comptroller issued a report finding and concluding that Wells Fargo's "sales practices were unethical; the Bank's actions caused harm to consumers; and Bank management had not responded promptly to address these issues."

CLASS ACTION COMPLAINT

17. The Comptroller has concluded that "the misaligned priorities and unacceptable behavior at Wells Fargo resulted in unsafe and unsound practices that led to widespread consumer harm." The Comptroller has recommended "additional actions to hold the bank and individuals accountable."

## PARTIES

18. Plaintiff Friedman is, and at all times relevant hereto has been, an individual and a resident of Los Angeles County, California.

19. Plaintiff Hernandez is, and at all times relevant hereto has been, an individual and a resident of Riverside County, California.

20. Defendant WELLS FARGO BANK, N.A. ("NA"), is, and at all times relevant hereto has been, a national banking association chartered under the laws of the United States, with its primary place of business in Sioux Falls, South Dakota. NA provides WELLS FARGO & COMPANY's personal and commercial banking services, and is WELLS FARGO & COMPANY's principal subsidiary.

21. Defendant WELLS FARGO & COMPANY ("CO") is, and at all times relevant hereto has been, a corporation organized and existing under the laws of the State of Delaware. CO is a financial services company with over $1.5 trillion in assets, and provides banking, insurance, investments, mortgage, and consumer and commercial finance through more than 9,000 locations, 12,000 ATMs, and via the internet. It has approximately 265,000 full-time employees, and is ranked 29th on Fortune Magazine's 2014 rankings of America's 500 largest corporations.

22. The true names and capacities of the Defendants named herein as DOES 1 through 6,300, inclusive, whether individual, corporate, associate or otherwise, are unknown to Plaintiffs who therefore sue such Defendants under fictitious names. Plaintiffs are informed and believe, and on that basis

- 7 -
CLASS ACTION COMPLAINT

allege, that these Defendants, DOES 1 through 6,300, are in some manner or capacity, and to some degree, legally responsible and liable for the damages of which Plaintiffs complain.  Plaintiffs will seek leave of Court to amend this Complaint to set forth the true names and capacities of all fictitiously-named Defendants within a reasonable time after they become known.

23.   In this Complaint, when reference is made to any act or omission of a Defendant, such allegations shall include the acts and omissions of owners, officers, directors, agents, employees, contractors, vendors, affiliates, and representatives of said Defendant while acting within the course and scope of their employment or agency on behalf of said Defendant.

## FACTUAL ALLEGATIONS

24.   Plaintiff Friedman is and has been a Wells Fargo customer since 2013. Since opening a personal bank account with Wells Fargo, Friedman noticed fees charged to his account for products and/or services of which he had no knowledge, which he did not recognize, did not authorize, and did not consent to.

25.   Plaintiff Hernandez is and has been a Wells Fargo customer for over 5 years. Within the 3 years preceding the filing of this Complaint, Hernandez also noticed fees charged to his account for products and/or services of which he had no knowledge, which he did not recognize, did not authorize, and did not consent to.

26.   Wells Fargo's *modus operandi* is to attempt to get each customer to maintain numerous accounts with Wells Fargo. In, a brochure published by Wells Fargo called "The Vision & Values: of Wells Fargo;" Wells Fargo' states: "Going for gr-eight,' Our average retail banking household has about six products with us. We want to get to eight… and beyond. One of every four already has eight or more. Four of every 10 have six or more:"

27. In its 2014 Annual Report to the U.S. Securities and Exchange Commission, Wells Fargo boasts about its "products" per customer and its "cross-sell strategy." "Our vision is to satisfy all our customers' financial needs, help them succeed financially, be recognized as the premier financial services company in our markets and be one of America's great companies. Important to our strategy to achieve this vision is to increase the number of our products our customers use and to offer them all of the financial products that fulfill their financial needs." That report further states: "Our cross-sell strategy is to increase the number of products our customers use by offering them all of the financial products that satisfy their financial needs."

28. Wells Fargo further stated in its 2014 Annual Report to the U.S. Securities & Exchange Commission: "we continued to maintain our solid customer relationships across the Company, with retail banking household cross-sell of 6.17 products per household (November 2014); Wholesale Banking cross-sell of 7.2 products per relationship (September 2014); and Wealth, Brokerage and Retirement cross-sell of 10.49 products per retail banking household (November 2014)." Wells Fargo further stated in that same filing: "We believe there is more opportunity for cross-sell as we continue to earn more business from our customers. Our goal is eight products per household."

29. In order to achieve its goal of eight accounts per household, Wells Fargo imposes, and at all times relevant hereto has imposed, unrelenting pressure on its employees to open numerous accounts per customer.

30. Wells Fargo has strict quotas regulating the number of daily "solutions" that its employees must reach; these "solutions" include the opening of new banking and credit card accounts. Managers constantly hound, berate, demean and threaten employees to meet these unreachable quotas. Managers often tell employees to do whatever it takes to reach their quotas. Employees

CLASS ACTION COMPLAINT

who do not reach their quotas are often required to work hours beyond their typical work schedule without being compensated for that extra work time, and/or are threatened with termination.

31.  The quotas imposed by Wells Fargo on its employees are often not attainable because there simply are not enough customers who enter a branch on a daily basis for employees to meet their quotas through traditional means.

32.  Wells Fargo's employees have thus resorted to alternative means to meet quotas, including using high pressure sales tactics to coerce customers into opening additional accounts or using inaccurate or misleading information about potential accounts to induce customers to open them.

33.  Wells Fargo employees also pressure their own family members and friends to sign up for accounts to meet their quotas. Some employees report that they have "tapped out" every family member and friend for accounts. Others report that they spend holiday dinners trying to convince family members to sign up for accounts. Management encourages employees to achieve "solutions" through family members. Since these accounts are opened by friends and family as favors, they are often unfunded, and can result in fees charged by Wells Fargo to its own employees' families or acquaintances, even for such "zero balance" accounts.

34.  Wells Fargo's employees have also engaged, on a massive scale, in *gaming tactics* to increase their "solutions" and meet minimum quotas. Gaming is so ingrained in the business of Wells Fargo that many of the tactics, employed to meet these sky-high quotas, have commonly-used names. These gaming practices are so pervasive within Wells Fargo's business model that some methods of gaming have been given their own names.

a. *"Sandbagging"* refers to Wells Fargo's practice of failing to open accounts when requested by customers, and instead accumulating a number of

account applications to be opened at a later date. Specifically, Wells Fargo employees collect manual applications for various products, stockpile them in an unsecured fashion, and belatedly open up the accounts (often with additional, unauthorized accounts) in the next sales reporting period, frequently before or after banking hours, or on bank holidays such as New Year's Day.

b. *"Pinning"* refers to Wells Fargo's practice of assigning, without customer authorization, Personal Identification Numbers ("PINs") to customer ATM card numbers with the intention of, among other things, impersonating customers on Wells Fargo computers, and enrolling those customers in online banking and online bill-pay without the customers' consent.

c. *"Bundling"* refers to Wells Fargo's practice of incorrectly informing customers that certain products are available only in packages with other products such as additional accounts, insurance, annuities, and retirement plans.

35. In testimony before the Senate Banking Committee on September 20, 2016, the Director of the U.S. Consumer Financial Protection Bureau ("CFPB") testified that an investigation of Wells Fargo's practices "found that, in order to meet sales goals and collect financial bonuses for themselves, employees of the bank created unauthorized deposit and credit card accounts, enrolled consumers in online banking services, and ordered debit cards for consumers, all without their consent or even their knowledge. Some of these practices involved fake email accounts and phony PIN numbers."

36. The CFPB investigation found Wells Fargo's "fraudulent conduct occurred on a massive scale." It found that "Wells Fargo opened 1,534,280 deposit accounts that may not have been authorized, including transferring funds from some customer accounts without their knowledge or consent. Wells Fargo also initiated applications for 565,443 credit card accounts that may

1    not have been authorized, by using consumers' information without their

2    knowledge or consent."  The CFPB concluded that Wells Fargo's practices

3    "represent a staggering breach of trust."

4    37.    The CFPB's investigation reveals that for at least the past 4 years, Wells

5          Fargo has operated the largest identity theft organization in history,

6          involving over 5,000 employees.

7    38.    While Wells Fargo has recently terminated over 5,300 employees (which by

8          all sources is but a fraction of the employees who participated in these illegal

9          activities) who engaged in these types of illegal, unethical behavior, they

10         still reward individuals such as Carrie Tolstedt, who was the Wells Fargo

11         executive overseeing much of this behavior, and who was referred to as the

12         "chief sandbagger," with a termination payment of more than $124 million.

13   39.    Despite blaming low-level employees and terminating approximately 5,300

14         of them, the CFPB concluded that "[t]he gravity and breadth of the fraud

15         that occurred at Wells Fargo cannot be pushed aside as the stray misconduct

16         of just a few bad apples."  The CFPB's investigation concluded that "Wells

17         Fargo," not its low-level employees, "built and sustained a program where

18         the bank and many of its employees served themselves instead, violating the

19         basic ethics of a banking institution."  The CFPB found that "Wells Fargo,"

20         not just its low-level employees, "engaged in abusive conduct toward its

21         customers and consumers."

22   40.    Plaintiffs are informed and believe, and on that basis allege, that Carrie

23         Tolstedt was the Wells Fargo executive who was in charge of the unit in

24         which employees opened more than 2 million unauthorized customer

25         accounts. Wells Fargo continues to encourage this illegal conduct which

26         they acknowledge as unfair and abusive practices under federal law.

27   41.    While acting as a Wells Fargo executive, and while engaging in fraudulent

28         practices, Tolstedt continued to push "strong cross-selling ratios." In fact,

CLASS ACTION COMPLAINT

Wells Fargo has singled out Tolstedt and other executives touting the bank's "expertise" in selling multiple products which has been immensely profitable for the bank.

42. Even after determining that the problems existed, years ago, Wells Fargo took no action to terminate the fraudulent activities, they continued to promote and monetarily reward individuals who stole customer identies, opened fraudulent accounts, fabricated false emails and PIN numbers, and intentionally sold customers bundled accounts they did not need or desire.

43. Media outlets also report that Wells Fargo employees opened over 1.5 million deposit accounts that may not have been authorized and that may have been funded through simulated funding, or transferring funds from consumers' existing accounts without their knowledge or consent.

44. That analysis determined that roughly 85,000 of those accounts incurred approximately $2 million in fees. The fees included overdraft fees on linked accounts consumers already had, monthly service fees imposed for failure to keep minimum balances in the unauthorized accounts, and other fees.

45. The CFPB has described Wells Fargo's "fraudulent practices" as described herein as "outrageous and abusive," and as having been committed by Wells Fargo on "an enormous scale."

46. The Los Angeles City Attorney, in testimony before the Senate Banking Committee, testified that after conducting "numerous interviews with former Wells Fargo employees and Wells Fargo consumers," and "pour[ing] over public records, including voluminous court records from wrongful termination lawsuits former employees filed against Wells Fargo," the City Attorney's investigation found that Wells Fargo had "victimized consumers by opening customer accounts, and issuing credit cards and other products, without authorization."

CLASS ACTION COMPLAINT

47. The most accurate way to describe Wells Fargo's practices described herein is "**identity theft**" on an unprecedented massive scale.

48. The L.A. City Attorney's investigation further found that Wells Fargo "failed to notify customers that these accounts had been opened without their consent," and Wells Fargo had "made it difficult, if not impossible, for customers to receive accurate and clear information" regarding the fraudulent and unauthorized "opening of fee-generating customer accounts," and the addition of "unwanted secondary accounts and products, without customer permission."  The City Attorney's investigation found that many Wells Fargo customers "were told that the unauthorized accounts would be closed, only to find later that they were not."

49. The City Attorney's investigation also "found a fundamental breach of trust by the Bank [Wells Fargo] through its *misuse of consumers' personal information*."  Among other things, the City Attorney found that Wells Fargo's customers' "*personal and private information had been accessed by Wells Fargo in order to open unauthorized accounts*."

50. The City Attorney's investigation also found that Wells Fargo's customers had "money withdrawn from their authorized accounts to pay fees assessed by Wells Fargo on unauthorized accounts."

51. The City Attorney's investigation further found that in many instances Wells Fargo's customers' "unauthorized accounts were sent to debt collection agencies, and derogatory notes were placed on their credit reports."

52. Section 1036(a)(1)(B) of the Consumer Financial Protection Act ("CFPA") prohibits "unfair" acts or practices. 12 U.S.C. §5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. §5531(c)(1).

CLASS ACTION COMPLAINT

53.     By opening unauthorized deposit accounts and engaging in acts of simulated funding, Wells Fargo caused and was likely to cause substantial injury to consumers that was not reasonably avoidable, because it occurred without consumers' knowledge, and was not outweighed by countervailing benefits to consumers or to competition.

54.     Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. §5536(a)(1)(B). An act or practice is abusive if it materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service. 12 U.S.C. §5531(d)(1). Additionally, an act or practice is abusive if it takes unreasonable advantage of the inability of the consumer to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

55.     Wells Fargo's acts of opening unauthorized deposit accounts and engaging in simulated funding materially interfered with the ability of consumers to understand a term or condition of a consumer financial product or service, as they had no or limited knowledge of those terms and conditions, including associated fees.

56.     Additionally, Wells Fargo's acts of opening unauthorized deposit accounts and engaging in simulated funding took unreasonable advantage of consumers' inability to protect their interests in selecting or using consumer financial products or services, including interests in having an account opened only after affirmative agreement, protecting themselves from security and other risks, and avoiding associated fees.

57.     Therefore, Defendants engaged in "unfair" and "abusive" acts or practices that violate §§1031(c)(1), (d)(1), (d)(2)(B), and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§5531(c)(1), (d)(1), (d)(2)(B), 5536(a)(1)(B).

58.     Wells Fargo's analysis concluded that its employees also submitted applications for 565,443 credit-card accounts that may not have been

authorized by using consumers' information without their knowledge or consent. That analysis determined that roughly 14,000 of those accounts incurred $403,145 in fees. Fees incurred by consumers on such accounts included annual fees and overdraft-protection fees, as well as associated finance or interest charges and other late fees.

59. Section 1036(a)(1)(B) of the CFPA prohibits "unfair" acts or practices. 12 U.S.C. §5536(a)(1)(B). An act or practice is unfair if it causes or is likely to cause consumers substantial injury that is not reasonably avoidable and is not outweighed by countervailing benefits to consumers or to competition. 12 U.S.C. § 5531(c)(1).

60. By applying for and opening credit-card accounts using consumers' information without their knowledge, authorization or consent, Wells Fargo caused and was likely to cause substantial injury that was not reasonably avoidable, because it occurred without consumers' knowledge, and was not outweighed by countervailing benefits to consumers or competition.

61. Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. §5536(a)(1)(B). An act or practice is abusive if it materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service. 12 U.S.C. §5531(d)(1). Additionally, an act or practice is abusive if it takes unreasonable advantage of the consumer's inability to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. §5531(d)(2)(B).

62. Wells Fargo's acts of opening credit-card accounts using consumers' information without their knowledge or consent materially interfered with the ability of consumers to understand a term or condition of a consumer financial product or service, as they had no or limited knowledge of those terms and conditions, including associated fees.

63.   Additionally, Wells Fargo's acts of opening credit-card accounts using consumers' information without their knowledge or consent took unreasonable advantage of the consumers' inability to protect their interests in selecting or using a consumer financial product or service.

64.   Therefore, Wells Fargo engaged in "unfair" and "abusive" acts or practices that violate §§1031(c)(1), (d)(1), (d)(2)(B), and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§5531(c)(1), (d)(1), (d)(2)(B), 5536(a)(1)(B).

65.   During the Class Period, Wells Fargo's employees used email addresses not belonging to consumers to enroll consumers in online-banking services without their knowledge, authorization or consent. Section 1036(a)(1)(B) of the CFPA prohibits "abusive" acts or practices. 12 U.S.C. §5536(a)(1)(B). An act or practice is abusive if it takes unreasonable advantage of the consumer's inability to protect his or her interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

66.   Wells Fargo's acts of enrolling consumers in online-banking services without their knowledge, authorization or consent took unreasonable advantage of consumers' inability to protect their interests in selecting or using a consumer financial product or service, including interests in having these products or services activated only after affirmative agreement and authorization, and protecting themselves from security and other risks.

67.   Therefore, Wells Fargo engaged in "abusive" acts or practices that violate §§1031(d)(2)(B) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§5531(d)(2)(B), 5536(a)(1)(B).

68.   During the Class Period, Wells Fargo's employees requested debit cards and created PINs to activate them without consumers' knowledge, authorization or consent.

69.   Wells Fargo's acts of issuing debit cards to consumers without their knowledge, authorization or consent took unreasonable advantage of

consumers' inability to protect their interests in selecting or using a consumer financial product or service. 12 U.S.C. § 5531(d)(2)(B).

70.   Therefore, Wells Fargo engaged in "abusive" acts that violate §§1031(d)(2)(B) and 1036(a)(1)(B) of the CFPA. 12 U.S.C. §§5531(d)(2)(B), 5536(a)(1)(B).

71.   Wells Fargo has strict quotas regulating the number of daily "solutions" that its bankers must reach; these "solutions" include the opening of all new banking and credit card accounts. Managers constantly hound, berate, demean and threaten employees to meet these unreachable quotas. Managers often tell employees to do whatever it takes to reach their quotas.

72.   Employees who do not reach their quotas are often required to work hours beyond their typical work schedule without being compensated for that extra work time, and/or are threatened with termination.

73.   Customers who complain about receiving credit cards they did not request are advised by Wells Fargo to simply destroy the unrequested and unauthorized cards. However; simply destroying the unauthorized cards does not close the account nor repair the impact to a customer's credit profile.

74.   In the practice known at Wells Fargo as "pinning," a Wells Fargo banker obtains a debit card number, and personally sets the P1N, often to 0000, without customer authorization. "Pinning" permits a banker to enroll a customer in online banking, for which the banker would receive a solution (sales credit). To bypass computer prompts requiring customer contact information, bankers impersonate the customer online, and input false generic email addresses such as 1234@wellsfargo.com, noname@wellsfargo.com, or none@wellsfargo.com to ensure that the transaction is completed and that the customer remains unaware of the unauthorized activity.

CLASS ACTION COMPLAINT

75. Because of Wells Fargo's setting of unrealistic sales goals, Wells Fargo employees have engaged in, and continue to engage in, other gaming tactics, including, but not limited to:

a. Making misrepresentations to customers to get them to open additional accounts such as falsely stating: "you will incur a monthly fee on your checking account until you add a savings account."

b. Misrepresenting that additional accounts do not have monthly fees, when they actually do incur such fees.

c. Referring unauthorized, and therefore unfunded, accounts to collections because Wells Fargo's practices cause the accounts to have negative balances.

d. Selling heavily to individuals holding Mexican Matriculada Consular cards because the lack of a Social Security Number makes it easier to open numerous fraudulent accounts.

e. Advising customers who do not want credit cards that they will be sent a credit card anyway, and to just tear it up when they receive it.

76. Customers who have discovered unauthorized accounts often make the discovery accidentally. For example: (a) unexplained money being withdrawn from authorized accounts to fund unauthorized accounts; (b) mailings from Wells Fargo congratulating a customer on opening a new account the customer does not recognize, or asking a customer to update account information for accounts that the customer does not recognize; (c) calls from collection agencies stating the customer is overdrawn on an account that the customer does not recognize; and (d) discovering that checks a customer intended to be deposited into an authorized account do not appear in monthly statements because the checks had instead been deposited into an unauthorized account.

CLASS ACTION COMPLAINT

77. Customers have been prejudiced in numerous ways by Wells Fargo's gaming. For example: (a) customers lose money paying monthly service fees charged for unauthorized accounts; (b) customer accounts are placed into collection, forcing customers to fight with debt collection agencies for fees charged by Wells Fargo on unauthorized accounts; (c) pulling of customers' credit reports impact their credit scores, job applications, loans and mortgage applications; and (d) customers are forced to purchase costly identity theft protection services to ensure against further fraudulent identity theft activities. But for Wells Fargo's actions, including their quota-based business model, Plaintiffs and all other Class Members would not have incurred wrongful fees, been put into collections, suffered derogatory references on their credit reports and/or reduction of their credit scores, or been forced to purchase identity theft protection.

78. Customers' unauthorized accounts remain open, despite repeated customer requests to Wells Fargo to close those accounts.

79. Customers have difficulty reporting unauthorized activity. Reaching the correct representative is no guarantee the unauthorized account will be remedied, as complaining customers often never receive return calls from Wells Fargo.

80. Wells Fargo knew, or in the exercise of reasonable care should have known, that it's employees would not report the complaint, because Wells Fargo executives, such as Carrie Tolstedt and John Stumpf were more concerned with profit and the "gr-eight" program.

81. Wells Fargo requires that all new customer accounts be approved by a branch manager or assistant manager, thereby providing Wells Fargo management with a clear record of the number and types of accounts opened for each customer.

CLASS ACTION COMPLAINT

82.     Despite Wells Fargo's knowledge of gaming by its employees, it has done little, if anything, to terminate these practices, nor to reform the business model it created that has fostered them. While Wells Fargo has made a few minor changes to its policies, and has terminated a handful of employees, those efforts have been, at most, cosmetic, and ultimately benefit Wells Fargo by providing them with plausible deniability. However, the policies that encourage these tactics continue, and employees who engage in them continue to be rewarded monetarily, and even promoted, as Plaintiffs believe was the situation with Carrie Tolstedt and John Stumpf. Wells Fargo has not altered its quota system, nor has it reduced the illegal fraudulent activities, identity theft, manipulation of processing customer debit card purchases to maximize overdraft fees, etc.

83.     The Los Angeles City Attorney's investigation into Wells Fargo's practices complained of herein aptly found that:

"There is a sacred trust that consumers put in their financial institutions – a faith that their hard-earned money will be safe and secure, and that their banks' actions will be in the best interests of customers like themselves. Wells Fargo broke that trust. We should all work to assure it never happens again."

## CLASS ACTION ALLEGATIONS

84.     Plaintiffs bring this action on behalf of themselves and on behalf of all other persons similarly situated (the "Class" or "Class Members") against Defendants, namely:

A. All persons who had one or more checking accounts, savings accounts, brokerage accounts, or mortgages with Wells Fargo, or used any of Wells Fargo's banking services at any time within the four years preceding the filing of this Complaint to the present (the "Class Period"). Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendants.

CLASS ACTION COMPLAINT

B. All persons who purchased services from Wells Fargo not during the Class Period, but whose identifying information was stored on Wells Fargo's database at any time during the Class Period. Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendants.

C. All persons who have been financially harmed or damaged because of Wells Fargo's fraudulent conduct, had improper fees assessed against their Wells Fargo accounts, improper overcharges, had their accounts bundled, were sandbagged, or victims of pinning, subjected to financial harm or damages, loss of time, bank charges, late fees, negative impact on their credit score, and/or other miscellaneous costs and damages. Excluded from the Class are Defendants; officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of these Defendants.

85.   Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with their motion for class certification, or at any other time, based upon, among other things, changing circumstances and/or new facts obtained during discovery.

86.   Plaintiffs are and have been members of the proposed subclasses described herein.

87.   The number of persons in each proposed subclass is so numerous that joinder of all such persons would be impracticable.  While the exact number and identities of all such persons are unknown to Plaintiffs at this time and can only be obtained through appropriate discovery, Plaintiffs believe that each proposed subclass herein includes over 10,000 persons.

88.   There is a well-defined community of interest among the members of each subclass because common questions of law and fact predominate, Plaintiffs claims are typical of the members of each subclass, and Plaintiffs can fairly and adequately represent the interests of each subclass.

89.   Common questions of law and/or fact exist in this case with respect to each proposed subclass which predominate over any questions affecting only

individual members thereof, which do not vary between members thereof, and which drive the resolution of the claims of Plaintiffs and all other Class Members.

90.     The common questions of law and/or fact include, but are not limited to:

a.   Whether Defendants, jointly and severally, unlawfully used, maintained, lost or disclosed Class Members' personal and/or financial information;

b.   Whether Wells Fargo created a working environment which fostered and rewarded fraudulent actions by its employees;

c.   Whether Defendants violated the requirements of California Business & Professions Code §17200 *et seq*.;

d.   Whether Defendants' conduct was negligent, and/or grossly negligent;

e.   Whether Defendants acted willfully and/or with oppression, fraud, malice, or indifference to the consequences to Plaintiffs and the other Class Members;

f.   Whether Defendants' conduct constituted conversion;

g.   Whether Defendants' conduct constituted concealment;

h.   Whether Defendants' conduct constituted identity theft;

i.   Whether Defendants' conduct constituted conversion;

j.   Whether Plaintiffs and the other Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief;

k.   Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief; and,

l.   Whether Wells Fargo Management engaged in theft of customers' funds;

91.     Plaintiffs' claims and those of all other Class Members arise out of a common course of conduct by Defendants.

- 23 -
CLASS ACTION COMPLAINT

92.   Defendants have acted or refused to act on grounds that apply generally to the Class, as alleged above.

93.   The common questions of law and/or fact in this case are susceptible to common proof.

94.   Resolution of the common questions of law and/or fact in this case will resolve issues that are central to Plaintiffs' claims and the claims of all other Class Members.

95.   Common proof in this case will produce a common answer to the central issues in this case and will resolve the common questions essential to resolution of the Class claims in one stroke for all Class Members.

96.   The claims of the named Plaintiffs in this case are typical of, and not antagonistic to, those of the other Class Members which they seek to represent.

97.   Plaintiffs' claims, and those of all Class Members, are based on conduct which is not unique to either of the named Plaintiffs.

98.   Plaintiffs and all Class Members have been injured by the same common course of conduct by Defendants, and have suffered the same or similar injury, as alleged herein.

99.   Disposition of Plaintiffs' claims in a class action will benefit all parties and the Court.

100.   A class action in this case is superior to any other available method for the fair and efficient adjudication of the claims presented herein.

101.   If individual Class Members were each required to bring his or her own individual claims, any potential recovery by any such Class Member would be dwarfed by the cost of litigating on an individual basis.

102.   In this case, Plaintiffs seek to recover relatively small sums for themselves and all other Class Members.  Accordingly, the disparity between the cost of litigating individual claims and the individual recoveries sought make

CLASS ACTION COMPLAINT

individual claims highly unlikely, if not impossible. Litigation costs would render individual prosecution of Class Members' claims prohibitive. In cases such as this, where the individual recoveries sought by each Class Member are relatively small and eclipsed by the cost of litigating an individual claim, a class action is the only method by which Class Members may hope to resolve their claims.

103. The prosecution of separate actions by individual members of the proposed subclasses herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of each proposed subclass which would or may establish incompatible standards of conduct for Defendants, and which would also create a risk of adjudications with respect to individual members of the proposed subclasses herein which would, as a practical matter, be dispositive of the interests of other members of the proposed subclasses not parties to the particular individual adjudications, and/or would or may substantially impede or impair the ability of those other members to protect their interests.

104. Plaintiffs are adequate representatives of the subclasses they seek to represent because they are each members of the subclasses, and their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiffs will fairly and adequately represent and protect the interest of each subclass because their interests are not antagonistic to the Class. Plaintiffs have no conflict of interest with any other Class Member. Plaintiffs have retained counsel who are competent and experienced in the prosecution of consumer fraud and class action litigation. Plaintiffs and their counsel will prosecute this action vigorously on behalf of all Class Members.

105. Plaintiffs are informed and believe, and on that basis allege, that Defendants have one or more databases through which a significant majority of Class

CLASS ACTION COMPLAINT

Members may be identified and ascertained, and that Defendants maintain contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

106. The definitions of the proposed subclasses herein objectively depict who the members of the Class are, making it administratively feasible to determine whether a particular person is a Member of each subclass described herein.

**FIRST CAUSE OF ACTION**

**IDENTITY THEFT**

(California Civil Code §1798.80 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

107. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

108. California Civil Code §1798.81.5(b) requires any business that operates in California, including Wells Fargo, to implement and maintain reasonable security procedures and practices to protect its customers' personal information from "unauthorized access, destruction, use, modification, or disclosure."

109. Defendants failed to implement and/or maintain reasonable security procedures and practices to protect Wells Fargo customers' personal information from unauthorized access, use, modification or disclosure.

110. As described more fully herein, Defendants and their employees gained access to and used (and possibly modified and/or disclosed) the personal information of Plaintiffs and all other Class Members without Plaintiffs' or any other Class Member's authorization. Defendants and their employees then used that personal information, without authorization, to commit the acts and practices complained of herein including, without limitation, the

opening of unauthorized deposit accounts, credit cards, debit cards, and other products and services, such as online banking and online bill-pay services.

111. California Civil Code §1798.82(a) provides that any business that conducts business in California, including Wells Fargo, must disclose any breach of the security of its system that includes the personal information of its customers, following discovery or notification of the breach, to its customers in California whose personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

112. The personal information of Plaintiffs and all other Class Members was acquired by Defendants and their employees without Plaintiffs' or any other Class Member's authorization.

113. California Civil Code §1798.82(a) further requires that the required disclosure to customers concerning the unauthorized acquisition and use of their personal information "shall be made in the most expedient time possible and without unreasonable delay."

114. Defendants failed to timely and/or adequately notify Plaintiffs and/or any other Class Member that their personal information had been acquired and/or used without their authorization.  Any notification Defendants may have ultimately made was not "expedient," and/or was provided with "unreasonable delay."  The delay in providing notice to customers, including Plaintiffs and all other Class Members, concerning the unauthorized acquisition of their personal information, was not reasonable.

115. Defendants have violated California Civil Code §§1798.81.5(b) and 1798.82(a).

116. California Civil Code §§1798.84 provides that "[a]ny customer injured by a violation of [§§1798.81.5(b) and/or 1798.82(a)] may institute a civil action to recover damages."

CLASS ACTION COMPLAINT

117.  Plaintiffs and all other Class Members are entitled, and hereby seek, damages for Defendants' violation of California Civil Code §§1798.81.5(b) and/or 1798.82(a).

118.  In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

<u>**SECOND CAUSE OF ACTION**</u>

**UNFAIR BUSINESS PRACTICES**

(California Business & Professions Code §17200 *et seq.*)

(<u>By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants</u>)

119.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

120.  The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice.  Cal. Bus. & Prof. Code §17200.

121.  Defendants have violated the "unfair" prong of the UCL by engaging in the acts and practices described herein.

122.  These fraudulent, unethical, unlawful and unfair business acts and practices, as described herein, were unfair because they caused Plaintiffs and other reasonable consumers concrete and particularized financial harm.

123.  Plaintiffs have suffered monetary loss as a direct result of Defendants' unlawful practices described herein.

124.  The gravity of the harm to Class Members resulting from these unfair acts and practices outweighed any conceivable reasons, justifications and/or motives of Defendants for engaging in such unfair acts and practices.  By committing the acts and practices alleged above, Defendants engaged in

CLASS ACTION COMPLAINT

1  unfair business practices within the meaning of California Business &

2  Professions Code §17200, *et seq.*

3  125.  Through their unfair acts and practices, Defendants have improperly

4  obtained money from Plaintiffs and all other Class Members.  As such,

5  Plaintiffs request that this Court cause Defendants to restore this money to

6  Plaintiffs and all Class Members, and to enjoin Defendants from continuing

7  to violate the UCL as discussed herein and/or from violating the UCL in the

8  future.  Otherwise, Plaintiffs, Class Members, and members of the general

9  public may be irreparably harmed and/or denied an effective and complete

10  remedy if such an order is not granted.

11  **THIRD CAUSE OF ACTION**

12  **FRAUDULENT BUSINESS PRACTICES**

13  (California Business & Professions Code §17200 *et seq.*)

14  (By Plaintiffs on behalf of themselves and all others similarly situated, and the

15  general public, against all Defendants)

16  126.  Plaintiffs re-allege and incorporate by reference, as though fully set forth

17  herein, all previous paragraphs of this Complaint.

18  127.  A business act or practice is "fraudulent" under the UCL if it is likely to

19  deceive members of the consuming public.

20  128.  Defendants' acts and practices as described herein have deceived Plaintiffs

21  and were highly likely to deceive reasonable members of the consuming

22  public. Plaintiffs and all other Class Members have suffered concrete and

23  particularized monetary loss as a direct result of Defendants' fraudulent

24  practices.

25  129.  As a result of the conduct described above, Defendants have been unjustly

26  enriched at the expense of Plaintiffs and all other Class Members.

27  Specifically, Defendants have been unjustly enriched by obtaining revenues

28

CLASS ACTION COMPLAINT

1  and profits that they would not otherwise have obtained absent their

2  fraudulent conduct.

3  130.  Through their fraudulent acts and practices, Defendants have improperly

4  obtained money from Plaintiffs and all other Class Members.  As such,

5  Plaintiffs request that this Court cause Defendants to restore this money to

6  Plaintiffs and all Class Members, and to enjoin Defendants from continuing

7  to violate the UCL as discussed herein and/or from violating the UCL in the

8  future.  Otherwise, Plaintiffs, Class Members, and members of the general

9  public may be irreparably harmed and/or denied an effective and complete

10  remedy if such an order is not granted.

11  **<u>FOURTH CAUSE OF ACTION</u>**

12  **UNLAWFUL BUSINESS PRACTICES**

13  (California Business & Professions Code §17200 *et seq*.)

14  <u>(By Plaintiffs on behalf of themselves and all others similarly situated, and the

15  general public, against all Defendants)</u>

16  131.  Plaintiffs re-allege and incorporate by reference, as though fully set forth

17  herein, all previous paragraphs of this Complaint.

18  132.  A business act or practice is "unlawful" under the UCL if it violates any

19  other law or regulation.

20  133.  The fraudulent, unethical, unlawful and unfair business acts and practices

21  engaged in by Defendants, as described herein, violated and continue to

22  violate, among other laws and/or regulations:

23  a.  The Federal Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*.;

24  b.  California Penal Code §496;

25  c.  California Penal Code §530.5;

26  d.  California Penal Code §531;

27  e.  California Penal Code §502;

28  f.  15 United States Code §680, *et seq*.;

- 30 -

g.      15 United States Code §6801, *et seq.*;

h.      California Civil Code §1798.82.

i.      18 U.S.C. §1028;

j.      18 U.S.C. §1341;

k.      18 U.S.C. §1343;

l.      18 U.S.C. §1344;

m.      18 U.S.C. §1513; and,

n.      The CFPA.

134.    As a result of the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiffs and other Class Members.  Specifically, Defendants have been unjustly enriched by obtaining revenues and profits that they would not otherwise have obtained absent their unlawful conduct.

135.    Through their unfair acts and practices, Defendants have improperly obtained money from Plaintiffs and all other Class Members.  As such, Plaintiffs request that this Court cause Defendants to restore this money to Plaintiffs and all Class Members, and to enjoin Defendants from continuing to violate the UCL, and/or from violating the UCL in the future.  Otherwise, Plaintiffs, Class Members, and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## FIFTH CAUSE OF ACTION

**VIOLATION OF FEDERAL FAIR CREDIT REPORTING ACT**

(15 U.S.C. §1681 *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

136.    Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

CLASS ACTION COMPLAINT

137.    Plaintiffs, all other Class Members, and Defendants are all "persons" within the meaning of 15 U.S.C. §1681a(b).

138.    Plaintiffs and all other Class Members are "consumers" within the meaning of 15 U.S.C. §1681a(c).

139.    The FCRA prohibits any person or entity from obtaining information from a consumer's credit report without a valid need.

140.    The FCRA makes it unlawful for any person to obtain a consumer's credit report for any purpose other than one or more enumerated "permissible purposes." 15 U.S.C. §1681b.

141.    Defendants knowingly obtained Plaintiffs' and all other Class Members' credit report under false pretenses and/or without a permissible purpose.

142.    Each time Wells Fargo obtained a customer's credit report, or information from a customer's credit report, in connection with an unauthorized deposit account, credit card, debit card, or other unauthorized product or service, it did so without a valid need and without a permissible purpose.

143.    Defendants obtained Plaintiffs' and every other Class Members' credit report in connection with the issuance of credit cards without Plaintiffs' or any other Class Members' knowledge, authorization or consent, and failed to notify Plaintiffs or any other Class Member that their credit reports had been obtained in connection with the issuance of a credit card, in violation of 15 U.S.C. §1681m(d)(1).

144.    Neither Plaintiff nor any other Class Member authorized Defendants to obtain their credit report for any purpose in connection with unauthorized deposit accounts, credit and/or debit cards, or any other product or service.

145.    Defendants' receipt of consumer credit reports in connection with the unauthorized accounts, products and/or services described herein was in violation of the FCRA, 15 U.S.C. §1681, *et seq*.

CLASS ACTION COMPLAINT

146. Defendants knowingly and willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681, *et seq.*, in violation of 15 U.S.C. §1681n, with respect to Plaintiffs and every other Class Member.

147. Defendants at the very least were negligent in failing to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681, *et seq.*, in violation of 15 U.S.C. §1681n, with respect to Plaintiffs and every other Class Member.

148. Defendants have blamed their employees for the acts and practices complained of herein.  However, Defendants were aware that their employees planned the acts and practices complained of herein.

149. Defendants agreed with their employees and intended that the acts and practices complained of herein be committed.

150. Defendants are liable to Plaintiffs and each other Class Member for damages of between $100 and $1,000 each, punitive damages, attorneys' fees and costs of suit pursuant to 15 U.S.C. §1681n(a).

151. In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## **SIXTH CAUSE OF ACTION**

## **VIOLATION OF CALIFORNIA PENAL CODE §496**

(Cal. Penal Code §496)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

152. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

CLASS ACTION COMPLAINT

153.   California Penal Code §496(a) makes it unlawful for any person to receive any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or to conceal, withhold, or aid in concealing or withholding any property from the owner, knowing the property to be so stolen or obtained.

154.   By engaging in the acts and practices described herein, Defendants received property belonging to Plaintiffs and every other Class Member that had been stolen or that had been obtained in a manner constituting theft.

155.   Defendants knew the property they received that belonged to Plaintiffs and every other Class Member had been stolen or obtained in a manner constituting theft.

156.   Defendants concealed and/or withheld from Plaintiffs and every other Class Member property belonging to Plaintiffs and every other Class Member that had been stolen or that had been obtained in a manner constituting theft, knowing the property to have been so stolen or obtained.

157.   Defendants have blamed their employees for the acts and practices complained of herein.  However, Defendants were aware that their employees planned the acts and practices complained of herein.

158.   Defendants agreed with their employees and intended that the acts and practices complained of herein be committed.

159.   California Penal Code §496(c) permits any person who has been injured by a violation of California Penal Code §496(a) to bring a civil action for three times the amount of actual damages sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

160.   By engaging in the acts and practices described herein, Defendants violated California Penal Code §496(a).

CLASS ACTION COMPLAINT

161.  Plaintiffs and all other Class Members are entitled to, and hereby seek, three times the amount of actual damages sustained by Plaintiffs and all other Class Members, costs of suit, and reasonable attorneys' fees.

## SEVENTH CAUSE OF ACTION

## CONVERSION

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

162.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

163.  Defendants wrongfully exercised control over the personal property of Plaintiffs and all other Class Members, including without limitation, deposit accounts, funds in deposit accounts, credit cards, debit cards, and other retail banking products.

164.  Plaintiffs and all other Class Members had a legal right to, among other things, funds in their deposit accounts, credit cards issued in their names, debit cards issued in their names, and other retail banking products issued and/or opened in their names.

165.  Defendants intentionally and substantially interfered with Plaintiffs' and all other Class Members' personal property described herein by taking possession of that property, preventing Plaintiffs and all other Class Members from having access to that property, destroying that property, and/or refusing to return the property when Plaintiffs and other Class Members demanded its return.

166.  Neither Plaintiffs nor any other Class Member consented to Defendants' exercise of control over their property.

167.  Plaintiffs and all other Class Members were harmed by Defendants' control over their property, and Defendants' control over their property was a substantial factor in causing harm to Plaintiffs and all other Class Members.

168.  Defendants have blamed their employees for the acts and practices complained of herein.  However, Defendants were aware that their employees planned the acts and practices complained of herein.

169.  Defendants agreed with their employees and intended that the acts and practices complained of herein be committed.

170.  Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' conversion of their property.

171.  In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## EIGHTH CAUSE OF ACTION

### BREACH OF FIDUCIARY DUTY

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

172.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

173.  Defendants were under a duty to act with the utmost good faith in the best interests of its banking customers.

174.  Defendants owed a fiduciary duty to Plaintiffs and all other Class Members.

175.  Plaintiffs and all other Class Members were harmed by Defendants' breach of the fiduciary duty to use reasonable care.

176.  Defendants were Plaintiffs' and all other Class Members' bankers and/or money managers.

177.  Defendants acted as fiduciaries on behalf of Plaintiffs and all other Class Members as they were entrusted with the care and sound management of Plaintiffs' and all other Class Members' money.

- 36 -
CLASS ACTION COMPLAINT

178.   Defendants failed to act as reasonably careful bankers would have acted under the same or similar circumstances.

179.   Defendants knowingly acted against the interests of Plaintiffs and all other Class Members in connection with their deposit accounts, other products and services, and their banking relationship.

180.   Plaintiffs and all other Class Members did not give informed consent for Defendants to engage in the acts and practices complained of herein.

181.   Plaintiffs and all other Class Members were harmed by Defendants' breach of their fiduciary duties.

182.   Defendants' conduct was a substantial factor in causing the harm suffered by Plaintiffs and all other Class Members.

183.   Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' breach of fiduciary duty.

184.   In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## NINTH CAUSE OF ACTION

### NEGLIGENT HIRING, RETENTION, AND SUPERVISION

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

185.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

186.   Plaintiffs and all other Class Members were harmed by Defendants' employees as described herein, and Defendants are responsible for that harm because Defendants negligently hired, supervised and/or retained the employees who committed the acts and practices complained of herein.

- 37 -

CLASS ACTION COMPLAINT

187. Defendants claim that its low-level employees are responsible for the acts and practices complained of herein, including the opening of unauthorized deposit accounts, credit cards, debit cards, online banking services, online bill-pay services, and other unauthorized products and/or services.

188. Defendants claim that they have terminated approximately 5,300 employees who Defendants claim were responsible for the acts and practices complained of herein, including the opening of unauthorized accounts and purchase of other unauthorized products and/or services.

189. Defendants hired each and every one of those employees who they now claim are responsible for the fraudulent and unlawful acts and practices described herein.

190. Those employees who Defendants now blame for the fraudulent and unlawful acts and practices described herein were or became unfit and/or incompetent to perform the work they were hired to perform.

191. Defendants knew or should have known that their employees were or became unfit and/or incompetent to perform the work they were hired to perform, and that this unfitness and/or incompetence created a particular risk to others.

192. Plaintiffs and all other Class Members were harmed by Defendants' employees' unfitness and/or incompetence.

193. Defendants' negligence in hiring, supervising and/or retaining its employees who committed the acts and practices complained of herein was a substantial factor in causing harm to Plaintiffs and all other Class Members.

194. Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' negligent hiring, supervision and/or retention of its employees who committed the acts and practices complained of herein.

195. In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and

conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## TENTH CAUSE OF ACTION

## INTENTIONAL OR NEGLIGENT MISREPRESENTATION

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

196.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

197.   Defendants made false representations that harmed Plaintiffs and all other Class Members.

198.   Defendants represented to Plaintiffs and all other Class Members that, among other things, Wells Fargo had not opened any deposit account without Plaintiffs' or other Class Members' knowledge, consent or authorization.

199.   Defendants also represented to Plaintiffs and all other Class Members that, among other things, Wells Fargo had not issued any credit card and/or debit card in the names of Plaintiffs and/or other Class Members without Plaintiffs' or other Class Members' knowledge, consent or authorization.

200.   Defendants also represented to Plaintiffs and all other Class Members that, among other things, Wells Fargo had not opened or issued any other product and/or service in Plaintiffs' or other Class Members' names without Plaintiffs' or other Class Members' knowledge, consent or authorization.

201.   Defendants' representations described herein were false.

202.   Defendants knew the representations described herein were false when they made them, or made the representations described herein recklessly without regard for their truth.

CLASS ACTION COMPLAINT

203. Even if Defendants honestly believed that the representations described herein were true, Defendants had no reasonable grounds for believing those representations were true when they made them.

204. Defendants intended Plaintiffs and all other Class Members to rely on the false representations described herein.

205. Plaintiffs and all other Class Members reasonably relied on Defendants' false representations described herein.

206. Plaintiffs and all other Class Members were harmed by Defendants' false representations.

207. Plaintiffs' and all other Class Members' reliance on Defendants' false representations described herein was a substantial factor in causing Plaintiffs and all other Class Members harm.

208. Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' false representations.

209. In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## ELEVENTH CAUSE OF ACTION

### AIDING & ABETTING IDENTITY THEFT, CONVERSION, MISREPRESENTATION, VIOLATION OF FCRA, CONCEALMENT

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

210. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

211. Plaintiffs and all other Class Members were harmed by the actions of Defendants' employees.

CLASS ACTION COMPLAINT

212.   Defendants are responsible for the harm suffered by Plaintiffs and all other Class Members, as described herein, because Defendants aided and abetted their employees in committing the acts and practices complained of herein.

213.   Defendants knew that its employees committed, and had been committing, the acts and practices described herein.

214.   Defendants gave substantial encouragement and/or assistance to its employees in committing the acts and practices described herein.

215.   Defendants' conduct was a substantial factor in causing harm to Plaintiffs and all other Class Members.

216.   Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' aiding and abetting their employees in committing the acts and practices complained of herein.

217.   In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

**TWELFTH CAUSE OF ACTION**

**CONCEALMENT**

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

218.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

219.   Plaintiffs and all other Class Members were harmed because Defendants concealed certain information including, without limitation, that deposit accounts had been opened in their names, credit and/or debit cards had been issued in their names, and other products and/or services had been purchased and/or opened in their names.

CLASS ACTION COMPLAINT

220. Defendants had a fiduciary relationship with Plaintiffs and all other Class Members.

221. Defendants intentionally failed to disclose to Plaintiffs and all other Class Members, among other things, that deposit accounts had been opened in their names, credit and/or debit cards had been issued in their names, and other products and/or services had been purchased and/or opened in their names, all without Plaintiffs' or other Class Members' knowledge, consent and/or authorization.

222. Defendants may have disclosed some facts to Plaintiffs and other Class Members about products and/or services opened in their name(s), but Defendants failed to disclose other material facts, making Defendants' disclosure(s) deceptive.

223. Defendants failed to disclose certain material facts to Plaintiffs and all other Class Members that were known only to Defendants and that could not have been discovered by Plaintiffs or other Class Members.

224. Defendants prevented Plaintiffs and other Class Members from discovering material facts concerning products and/or services that had been opened in their name(s).

225. Plaintiffs and other Class Members did not know the facts that Defendants had concealed from them.

226. Defendants intended to deceive Plaintiffs and all other Class Members by concealing the facts described herein.

227. Had Defendants disclosed the omitted information, Plaintiffs and all other Class Members would have behaved differently.

228. Plaintiffs and all other Class Members were harmed by Defendants' concealment of the facts described herein.

229. Defendants' concealment of the facts described herein was a substantial factor in causing Plaintiffs and all other Class Members harm.

230. Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' concealment.

231. In engaging in the acts and practices described herein, Defendants, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## THIRTEENTH CAUSE OF ACTION

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

(18 U.S.C. §1962, *et seq.*)

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

232. Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

233. Defendants are "culpable persons" within the meaning of The RICO Act.

234. Defendants and Does 1 through 1,000 constitute an "enterprise" within the meaning of The RICO Act.  Does 1 through 1,000 are employed by or associated with the enterprise.

235. The fraudulent and unlawful acts described herein affect, and have had an effect on, interstate commerce.

236. The fraudulent and unlawful acts and practices described herein constitute a "pattern of racketeering activity" within the meaning of The RICO Act.

237. The fraudulent and unlawful acts and practices described herein constitute a "racketeering activity" within the meaning of The RICO Act.

238. Plaintiffs and all other Class Members are "persons" within the meaning of The RICO Act.

CLASS ACTION COMPLAINT

239. Plaintiffs and all other Class Members have sustained injury to their business and/or property as alleged more fully herein by reason of Defendants' and Does 1 through 1,000's violation of The RICO Act.

240. Defendants and Does 1 through 1,000 agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs and all other Class Members.

241. Pursuant to and in furtherance of their fraudulent scheme, Defendant(s) committed multiple related acts of fraud, theft, receiving stolen property, identity theft, tampering with and retaliating against witnesses, and other unlawful and illegal acts.

242. The acts described and set forth herein constitute a pattern of racketeering activity pursuant to 18 U.S.C. §1961(5).

243. Defendants and Does 1 through 1,000 have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. §1962(c).

244. As a direct and proximate result of the racketeering activities and violations of 18 U.S.C. §1962(c) by Defendants and Does 1 through 1,000, Plaintiffs and all other Class Members have been injured in their business and property in that, among other things, they have lost money, been charged fees and costs for products and/or services they did not request, authorize or consent to, had their identities stolen, had credit cards opened in their names without their knowledge or consent, had debit cards issued in their names without their knowledge or consent, had their credit reports obtained by Defendants without their knowledge, authorization or consent, and suffered negative impacts on their credit scores.

CLASS ACTION COMPLAINT

245.  Plaintiffs and all other Class Members are entitled to, and hereby seek, damages for Defendants' and Does 1 through 1,000's RICO violations, including without limitation treble damages.

246.  In engaging in the acts and practices described herein, Defendants and Does 1 through 1,000, and each of them, acted fraudulently, oppressively, maliciously and with a willful and conscious disregard of the rights of Plaintiffs and all other Class Members. Accordingly, Plaintiffs and all other Class Members are entitled to exemplary and punitive damages.

## FOURTEENTH CAUSE OF ACTION

### ACCOUNTING

(By Plaintiffs on behalf of themselves and all others similarly situated, and the general public, against all Defendants)

247.  Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, all previous paragraphs of this Complaint.

248.  The amount of funds transferred, deposited, credited and/or debited to accounts opened and maintained by Defendants in the name of, on behalf of, or for the benefit of Plaintiffs and each other Class Member, including without limitation deposit accounts and credit card accounts, and the disposition of those funds, is unknown to Plaintiffs and all other Class Members at this time and can only be determined with certainty by Defendants.

249.  The amount of funds transferred, deposited, credited, debited and/or charged to accounts in the name of, on behalf of, or for the benefit of Plaintiffs and each other Class Member, for unauthorized products and/or services including without limitation deposit accounts, credit cards, debit cards, online banking, online bill-pay, and other unauthorized products and/or services, and the disposition of those funds, is unknown to Plaintiffs and all

CLASS ACTION COMPLAINT

1   other Class Members at this time and can only be determined with certainty

2   by Defendants.

3   250.   Therefore, Plaintiffs respectfully request that the Court order Defendants to

4   provide Plaintiffs and all other Class Members with a complete and accurate

5   accounting of all of the aforementioned accounts and funds.

6

7   **PRAYER FOR RELIEF**

8   WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of all Class

9   Members, pray for judgment against Defendants as follows:

10   **CLASS CERTIFICATION**

11   1.   That the Court certify the subclasses herein to proceed as a class action

12   pursuant to Fed. R. Civ. Proc. 23(b)(1), 23(b)(2) and/or 23(b)(3), adjudge

13   Plaintiffs to be adequate representatives of each subclass, and appoint

14   Plaintiffs' counsel as counsel for each subclass.

15   **IDENTITY THEFT**:

16   2.   For compensatory and special damages;

17   3.   For punitive and exemplary damages; and,

18   4.   For such other and further relief as the Court may deem proper.

19   **VIOLATION OF BUSINESS & PROFESSIONS CODE §§17200 *et seq.*:**

20   5.   A judgment awarding Plaintiffs and all Class Members restitution and/or

21   other equitable relief, including, without limitation, restitutionary

22   disgorgement of all profits, or some portion of profits, and/or unjust

23   enrichment that Defendants obtained from Plaintiffs and the Class as a result

24   of the unlawful, unfair and/or fraudulent business practices described herein.

25   6.   An order enjoining Defendants from continuing to violate the UCL as

26   described herein, and/or an order enjoining Defendant from violating the

27   UCL in the future.

28

- 46 -

CLASS ACTION COMPLAINT

7.     A judgment awarding Plaintiffs their costs of suit, including reasonable attorneys' fees pursuant to California Code of Civil Procedure §1021.5 and as otherwise permitted by statute or law, and pre- and post-judgment interest; and,

8.     For such other and further relief as the Court may deem proper.

**VIOLATION OF THE FCRA**:

9.     For compensatory and special damages;

10.    For punitive and exemplary damages; and,

11.    For such other and further relief as the Court may deem proper.

**VIOLATION OF PENAL CODE §496**:

12.    For compensatory and special damages;

13.    For three times the amount of actual damages sustained by Plaintiffs and all other Class Members;

14.    Costs of Suit;

15.    Reasonable attorneys' fees;

16.    For punitive and exemplary damages; and,

17.    For such other and further relief as the Court may deem proper.

**CONVERSION**:

18.    For compensatory and special damages;

19.    The value of the funds converted with interest from the time of conversion;

20.    Fair compensation for the time Plaintiffs and all other Class Members have spent in pursuing the return and recovery of their converted funds;

21.    For punitive and exemplary damages; and,

22.    For such other and further relief as the Court may deem proper.

**BREACH OF FIDUCIARY DUTY**:

23.    For compensatory and special damages;

24.    For prejudgment interest, compounded;

25.    For punitive and exemplary damages; and,

26.     For such other and further relief as the Court may deem proper.

**NEGLIGENT HIRING, RETENTION, AND SUPERVISION**:

27.     For compensatory and special damages;

28.     For such other and further relief as the Court may deem proper.

**INTENTIONAL OR NEGLIGENT MISREPRESENTATION**:

29.     For compensatory and special damages;

30.     For punitive and exemplary damages; and,

31.     For such other and further relief as the Court may deem proper.

**AIDING AND ABETTING IDENTITY THEFT, CONVERSION, MISREPRESENTATION, VIOLATION OF FCRA, CONCEALMENT**:

32.     For compensatory and special damages;

33.     The value of the funds converted with interest from the time of conversion;

34.     Fair compensation for the time Plaintiffs and all other Class Members have spent in pursuing the return and recovery of their converted funds;

35.     For punitive and exemplary damages; and,

36.     For such other and further relief as the Court may deem proper.

**CONCEALMENT**:

37.     For compensatory and special damages;

38.     For punitive and exemplary damages; and,

39.     For such other and further relief as the Court may deem proper.

**VIOLATION OF RICO ACT**:

40.     For compensatory and special damages;

41.     Trebling of damages;

42.     Costs of Suit;

43.     Reasonable attorneys' fees;

44.     For punitive and exemplary damages; and,

45.     For such other and further relief as the Court may deem proper.

/ / /

CLASS ACTION COMPLAINT

**ACCOUNTING**:

46.    For an order requiring the accountings described and requested in the Thirteenth Cause of Action.

**FOR ALL CAUSES OF ACTION**:

47.    Prejudgment interest at the maximum rate permitted by law;

48.    Costs of Suit; and

49.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all claims so triable.

Dated: October 3, 2016          By: LAW OFFICE OF CHRISTOPHER J. MOROSOFF

 _/s/ Christopher J. Morosoff_
CHRISTOPHER J. MOROSOFF,
Attorneys for Plaintiffs

CLASS ACTION COMPLAINT